UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Wells Fargo Bank, National Association,
as Trustee for Option One Mortgage Loan Trust 2007-2,
Asset-Backed Certificates, Series 2007-2,

v.

Civil No. 1:17-cv-136-JL
Opinion No. 2021 DNH 164

David B. Moskoff and Daphne M.N. Fotiades

**MEMORANDUM ORDER**

Following a jury trial and verdict in its favor, Plaintiff Wells Fargo moves for an award of attorneys' fees and costs in the amount of $333,038.84.[1] It seeks its attorneys' fees and costs for prosecuting and trying this judicial foreclosure action under a fee-shifting provision in the operative mortgage as well as Fed. R. Civ. P. 54(d)(2). Defendants David B. Moskoff and Daphne M.N. Fotiades object to Wells Fargo's fee and cost request, arguing that Wells Fargo is not entitled to a fee award and disputing the amount of fees and costs requested. This court has jurisdiction under 28 U.S.C. § 1332(a) (diversity) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

After consideration of the parties' submissions, including careful review of the billing records submitted by Wells Fargo, and hearing oral argument, the court grants Wells Fargo's motion but reduces the amount of requested fees and costs as detailed below. While the rates proposed by Wells Fargo are reasonable, the number of hours and amount of certain costs requested are excessive or unrecoverable.

---

[1] See Motion for Attorney Fees and Costs (doc. no. 289).

## I. Background

Wells Fargo filed suit in April 2017.[2] It sought a declaratory judgment confirming its right to enforce the subject note and mortgage against Moskoff and Fotiades, a judicial foreclosure order and decree of sale, and a judgment for the amount due on the note.[3] The case was hotly contested at every stage, and included over 300 filings (200 before trial), six interlocutory appeals, repeated discovery disputes, and court-supervised discovery. After over four years of litigation,[4] Wells Fargo tried its three claims against Moskoff and Fotiades before a jury, resulting in a verdict for Wells Fargo. Wells Fargo utilized two sets of lawyers in this matter. In the first part of the case, from roughly April 2017 to November 2019, lawyers from Korde and Associates in Massachusetts represented Wells Fargo. Then, from November 2019 through the trial in June 2021 and thereafter, lawyers from Locke Lord LLP's Boston, Massachusetts and Hartford, Connecticut offices represented the company.

## II. Analysis

### A. Entitlement to attorneys' fees and costs

In a diversity action such as this one that raises state law claims, "state law governs the award of fees." GT Solar Inc. v. EMX Controls, Inc., No. 12-CV-253-JD, 2012 WL 6214405, at

---

[2] See Amended Complaint (doc. no. 3).

[3] Wells Fargo asserted additional claims against other defendants, but those claims were either resolved or voluntarily dismissed before trial. The focus of Wells Fargo's suit was unquestionably its claims against Moskoff and Fotiades.

[4] Some of the delay in trying this case was attributable to the COVID-19 pandemic and its effect on court operations and travel restrictions for out-of-state witnesses. Wells Fargo moved to continue the trial several times due to company-imposed travel restrictions resulting from the pandemic. See doc. nos. 263, 264, 265, 267, 269. The court denied Wells Fargo's final motion to continue and scheduled the case for trial beginning on June 15, 2021.

*1 (D.N.H. Dec. 10, 2012) (DiClerico, J.) (citing In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 15 (1st Cir. 2012)). Under New Hampshire law, a request for attorneys' fees "must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." In the Matter of Hampers & Hampers, 154 N.H. 275, 289 (2006) (quotation omitted). An agreement between the parties that shifts attorneys' fees is interpreted by "giving the language used by the parties its reasonable meaning." Turner v. Shared Towers VA, LLC, 167 N.H. 196, 207 (2014).

Wells Fargo grounds its request for attorneys' fees on its mortgage with the Defendants. The Defendants ignore the attorneys' fees provision in the mortgage and instead argue that the Federal Declaratory Judgment Act does not provide Wells Fargo with a right to collect its attorneys' fees in this action.[5] The court agrees with Wells Fargo that the parties' mortgage provides it with the right to collect attorneys' fees and costs from the Defendants.

Here, the jury found the following: (1) both Moskoff and Fotiades signed the mortgage and breached their obligations under the mortgage; (2) Moskoff signed the operative note and breached his obligations thereunder; and (3) Wells Fargo was the holder of the note and mortgagee of the mortgage. The Defendants are therefore in default under the terms of the mortgage. In the event of a default under the mortgage, Wells Fargo may pursue "any other remedies or take any other actions permitted by applicable law" to collect amounts owed, and in pursuing these remedies, Wells Fargo "will collect all expenses incurred . . . including, but not

[5] While the Defendants are correct that the Declaratory Judgment Act does not contain a fee shifting provision, Wells Fargo is not basing its fee request on this statute. The Defendants' argument also loses sight of the fact that Wells Fargo tried and prevailed on its other claims for judicial foreclosure, decree of sale, and judgment on the note, and those claims entitle it to some award of attorneys' fees and costs.

limited to, reasonable attorneys' fees and costs of title evidence."[6] Thus, the plain and reasonable meaning of the mortgage provides Wells Fargo with the ability to recover from the Defendants its "reasonable attorneys' fees and costs of title evidence" incurred in pursuing this judicial foreclosure action. And under Fed. R. Civ. P. 54(d)(1), Wells Fargo, as the prevailing party, is also entitled to its costs.

### B. Amount of fee award

New Hampshire uses "eight guiding factors . . . in determining whether an attorney's fee is reasonable." Town of Barrington v. Townsend, 164 N.H. 241, 250 (2012) (quoting Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 356 (1987)). They are "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients." Id.

In this court, the "calculation of shifted attorneys' fees generally requires courts to follow the familiar lodestar approach." Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551–52 (2010)). Under that approach, "the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also In re Sullivan, 674 F.3d 65, 69 (1st Cir. 2012) (in determining the number of hours productively spent, the court should subtract time expended "on unnecessary, duplicative, or overworked tasks"). The court also determines "a

[6] Mortgage (doc. no. 289-1), at ¶ 21.

reasonable hourly rate or rates -- a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. The product of the hours reasonably worked times the reasonable hourly rate(s) comprises the lodestar," which may then "be further adjusted based on other considerations." Ray Haluch Gravel Co., 745 F.3d at 5.

Because New Hampshire's eight guiding factors "jibe with the lodestar method," the court will use the lodestar approach and also consider the state court factors to determine whether Wells Fargo's fee request is reasonable. In re Taal, 540 B.R. 24, 31 (Bankr. D.N.H. 2015); see also In re Sullivan, 674 F.3d at 69 (noting that the base loadstar amount may be adjusted "based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter") (quoting DeJesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009)).

1. Hourly rates sought

The court determines a reasonable hourly rate based on "the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Cent. Pension Fund, 745 F.3d at 5. Wells Fargo seeks the following hourly rates for both its national managing counsel and support staff and local counsel and staff:

Attorney at Korde & Associates, P.C.: $215

Paralegal at Korde & Associates, P.C.: $95

Partner/Senior Counsel at Locke Lord LLP: $400

Counsel at Locke Lord LLP: $150

Paralegal at Locke Lord LLP: $150

Research Librarian at Locke Lord LLP: $140

Defendants do not challenge the requested rates or otherwise argue that they are too high.

Both its national counsel rates and its local counsel rates are reasonable and commensurate with the rates of experienced partners or senior attorneys in the New Hampshire and Boston markets. See Town of Wolfeboro v. Wright-Pierce, Inc., No. 12-CV-130-JD, 2014 WL 12927092, at *5 (D.N.H. Mar. 10, 2014) (finding a rate of $400 for a partner at Hinckley Allen & Snyder, LLP's Boston office was reasonable) (DiClerico, J.); Valsoft Corp. v. Bacalan, Case No. 19-cv-672-JL, 2020 WL 9780743 (D.N.H. Aug. 4, 2020) (finding experienced attorney rates of $390 and $400 per hour reasonable) (Johnstone, M.J.); see also Wachovia Mortgage, FSB v. Toczek, 841 Fed. Appx. 267 (2d Cir. 2021) (finding that $425 an hour for a partner handling a foreclosure action in the District of Connecticut was reasonable). The proposed paralegal and support staff rates are also reasonable and consistent with the prevailing paralegal rates in the New Hampshire and New England markets.[7] The court thus accepts the attorney and staff rates proposed by Wells Fargo.

2. Number of hours worked

Wells Fargo seeks fees for the following amounts of time spent by its lawyers and support staff in this matter:

Korde & Associates, P.C. (attorneys): 201.60

Korde & Associates, P.C. (paralegals): 31.4

[7] See National Association of Legal Assistants, 2016 National Utilization & Compensation Survey Report, available at https://www.nala.org/sites/default/files/files/banner/2016%20NALA%20Utilization%20Compensation%20Survey%20Report.pdf (average 2016 hourly billing rate for paralegals in New England). While the average paralegal billing rate for the New England/Mid East region in this survey was $137, which is lower than the Locke Lord support staff rates sought here, the survey was taken almost five years ago, and those average rates have likely increased. The court is also applying a lower rate of $95/hour for the paralegal work from Wells Fargo's local counsel.

Locke Lord LLP (attorneys): 633.90

Locke Lord LLP (team members/paralegals[8]): 27.7

Total: 894.6 hours.

Wells Fargo argues that these nearly 900 hours were reasonably spent "given the highly litigious nature of this foreclosure action." As support, it references the numerous motions filed by the Defendants, which required objections and oral argument, as well as the extensive discovery process. Wells Fargo also alleges that its counsel had to spend extra time preparing for trial, or repeat some of its trial preparations, as a result of "numerous trial delays due to the COVID-19 pandemic" and travel moratoria issued by Wells Fargo and PHH Mortgage Services, Inc., which prevented witnesses from appearing for trial in person and complicated the witnesses' preparation for testimony.

Wells Fargo also argues that much of the time that its attorneys and support staff spent on this case was the result of obstructive, dilatory actions by the Defendants, or the Defendants' meritless motions and their insistence on objecting to almost any of Wells Fargo's requests. The parties were unable to agree on any stipulations or exhibits (as part of Wells Fargo's case in chief) prior to trial, which, according to Wells Fargo, caused the trial and trial preparation to take longer than normal.

The court generally agrees that this was a heavily litigated case, and much of that work was necessitated by the Defendants' litigation tactics or certain meritless legal positions they maintained throughout the suit (such as Fotiades' claim that she was not a party to the suit, but

[8] "The efficient use of paralegals is . . . an accepted cost-saving device" and "courts generally allow hours reasonably and productively expended by paralegals . . . to be compensated at market rates when constructing fee awards." Lipsett v. Blanco, 975 F.3d 934, 939 (1st Cir. 1992). The court therefore includes Wells Fargo's paralegal hours in the fee calculation.

only a "proposed intervenor"), their obfuscation or refusal to participate in discovery (as evidenced, for example, by the fact that the court had to oversee the Defendants' depositions and hold them at the courthouse), or their insistence on objecting to any request by Wells Fargo or other parties, regardless of whether it was a routine or otherwise harmless request (such as, partially objecting to a pro hac vice motion). Nevertheless, the court finds that certain billing entries were excessive, redundant, duplicative, otherwise unnecessary, or accounted for overworked or unrelated tasks, and reduces the total hours requested accordingly.

The court provides the following representative list of examples of the types of billing entries that it struck from Wells Fargo's fee calculation.

**Excessive, overworked, or redundant tasks.** The court does not quibble with Wells Fargo's decisions about how it staffed this case. But it must closely scrutinize those decisions, and the resulting increase in attorney hours invested in the case, when assessing the reasonableness of a fee request. At oral argument, Wells Fargo's counsel explained that changing counsel mid litigation was a "business decision that the client" made when it became clear that this case was going to trial. That does not explain why the very able lawyers from Korde and Associates could not have tried a collection case of this nature, saving Wells Fargo the added expense of having its new lawyers (with significantly higher billing rates) review the file, get up to speed on the work predecessor counsel had already completed, and try the case.[9] Wells Fargo was not forced to hire new lawyers to try this case. The court also disagrees with Wells Fargo that it was necessary for its lawyers to thoroughly prepare witnesses multiple times as a result of trial postponements.

[9] One of several examples of the type of redundant or unnecessary work that resulted from a midstream change in counsel was eight hours of "[r]esearch[ing] case law regarding foreclosures in New Hampshire" by "TG" at Locke Lorde. Ex. 2 (doc. no. 289-2), at 19, 21.

The court therefore reduces the requested hours to remove entries in which: (1) Locke Lorde attorneys or staff spent more than a reasonable amount of time reviewing the work of prior counsel; (2) the work of two or more lawyers was redundant and/or generally not needed given the nature of the task[10]; (3) one lawyer repeatedly reviewed a document that another lawyer had drafted and/or already reviewed; and (4) tasks that were simply overstaffed or overworked, such as preparing deposition designations for trial.[11] See DeJesus Nazario, 554 F.3d at 208 ("Thus, although it is possible, and indeed likely, that the district court may discount some of the time plaintiff's counsel spent in pre-trial proceedings, the district court should take care to excise only fat, leaving sinew and bone untouched"); Hart v. Bourque, 798 F.2d 519, 522–23 (1st Cir. 1986) (noting that the "inefficiency" of switching counsel midstream warranted a reduction in hours for tasks like "reviewing files" or reviewing the status of the case).

As for the decision to try this case with two lawyers, Wells Fargo argues that it needed two lawyers at trial because this was not a predictable trial and the Defendants' trial strategies or defenses were constantly shifting, up until the night before trial. The court is not persuaded. As a general matter, "the time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'" Hart, 798 F.2d at 523 (quoting King, 560 F.2d at 1027). "A trial court should ordinarily greet a claim that several lawyers were required to

---

[10] It appears from the billing entries that at least six Locke Lord attorneys worked on this file, including possibly four other lawyers ("TJC," "SS," "RTM," and "TG") that did not enter appearances in this case. Based on the lawyers appearing for hearings and trial, the court's understanding was that Attorneys Janis and Trifon were the only Locke Lord attorneys working on the case. Wells Fargo does not explain why the additional four attorneys' work was necessary or why this case required such a high number of lawyers and support staff. To the extent these additional lawyers or staff performed redundant or unnecessary tasks, the court strikes their billing entries accordingly.

[11] It also appears that Wells Fargo's lawyers spent an excessive amount of time strategizing or researching issues surrounding remote witness testimony at trial.

perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, 975 F.2d 934, 938–39 (1st Cir. 1992) (citing United Nuclear Corp. v. Cannon, 564 F. Supp. 581, 590 (D.R.I. 1983) (suggesting that, in fee-shifting milieu, district courts "must zealously guard against any propensity to over-staff litigation"). In Lipsett, the First Circuit Court of Appeals agreed with the district court's assessment that the presence of multiple lawyers and a paralegal at trial "was desirable due to the complex nature of the case and the reams of evidence which needed to be tracked and analyzed." The same cannot be said here.

At its core, this was a collection case with no serious dispute that Wells Fargo was the party entitled to enforce the loan documents, and the Defendants were the parties responsible for paying under those documents. Similar cases are frequently handled and tried by single, often less experienced, lawyers in this court and New Hampshire state courts. Thus, the court will reduce the requested hours to reflect the work of only one lawyer during trial.[12]

**Unrelated or otherwise unnecessary entries**. The court further reduces Wells Fargo's fee request by striking entries for work spent exclusively on claims against the other defendants in the case; work preparing internal organizational documents that were not required to prosecute the case (i.e. preparing a "trial readiness memorandum" or updating "the trial management report"); clerical or administrative tasks performed by attorneys' or entries for what appear to be different clients or cases entirely. See, e.g., Ex. 2 to Motion for Fees (doc. no. 289-2), at 6 (11/24/19 entries for "TJC" for "[p]reparation of status update and investor report" or "RTM" reviewing "response to consumer").

[12] The court took the total amount of fees billed by Attorneys Trifon and Janis from May 28, 2021 (beginning with the billing record on page 65 of doc. no. 289-2) through June 22, 2021, and halved that figure to arrive at the total amount of trial-related fees awarded ($36,240).

**Entries the court is unable to decipher.** Finally, the court strikes billing entries that it cannot decipher due to a lack of information in the entry. Where a party awarded fees "furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues" and may therefore "adjust those entries to achieve an equitable result." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008). Here, for example, there are a number of entries that are heavily redacted[13] ("correspondence with client") or only provide generic descriptions of the tasks ("review deposition transcripts" or "review hearing transcripts" or "review of status and strategy"), such that the court cannot determine what work was done or why it was necessary. The court reduces these entries accordingly.[14]

With these combined reductions, Wells Fargo's adjusted attorneys' fees for prosecuting and trying its claims against Defendants Moskoff and Fotiades are as follows:

Korde and Associates: $43,636.50[15]

---

[13] At oral argument, Wells Fargo's counsel explained that she redacted attorney-client privileged or work product protected information from the billing entries. While the court would not expect a party to waive the attorney-client privilege as part of a fee request, Wells Fargo had other options at its disposal to provide the court with more context or explanation for these redacted entries (such as an in-camera review of unredacted entries or fewer redactions that still preserved privileged information), but chose not to utilize them.

[14] The Defendants argued, both in their objections and at oral argument, that certain billing entries were illegible due to the font size. But they did not specify which entries were illegible or explain why they could not use a PDF reader to enlarge the typeface on the documents. The court had no issue reading the billing entries, either in printed format or electronic format. The Defendants also requested discovery on the redacted entries. As stated during oral argument, the court is inclined to strike the majority of these redacted entries in lieu of re-opening discovery.

[15] The court finds that lawyers and staff from Korde generally spent a reasonable number of hours litigating this case, especially considering the highly litigious character of the case. Korde utilized one attorney at a time and occasionally used a paralegal to perform administrative tasks, as the court would expect a bank to staff a foreclosure action like this.

Locke Lord: $140,915.00

Total: **$184,551.50**

### 3. Additional adjustments

Under both the federal "lodestar" and New Hampshire approaches to fee awards, the court has the option to make additional upward or downward adjustments based on several factors. In re Sullivan, 674 F.3d at 69 (noting that the base lodestar amount may be adjusted "based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter"). Considering that Wells Fargo's counsel obtained a complete victory against Moskoff and Fotiades and, as a result, bestowed a substantial benefit upon their client, the court will not make any further downward adjustments to the base lodestar amount. See Town of Barrington, 164 N.H. at 250 (noting the additional factors used in New Hampshire state courts to adjust the fee award).

## C. Amount of cost award

Finally, Wells Fargo seeks an award of costs and expenses. Trial counsel Locke Lord requests $1,754.75 in costs and supports this request with billing records explaining each itemized cost.[16] The court finds the amount of costs requested by Locke Lord reasonable and supportable and will award Wells Fargo the full amount of Locke Lord fees requested.

Pre-trial counsel Korde and Associates seeks $40,445.98 in costs. The largest line item for these costs is $34,213 in "court cost" or costs to "obtain documents."[17] In the section of its billing records explaining these costs, Korde lists several categories of fees or costs, but does not

[16] See doc. no. 289-2.

[17] Doc. no. 289-3, at 6.

provide specific amounts for each item. And while some of these costs are for hearing transcripts, the majority of the costs appear to be for fees that Korde paid an expert witness. Wells Fargo hired a handwriting expert in response to the Defendants' allegations that the operative mortgage and loan documents were forged, but that expert never testified at trial.

Wells Fargo does not provide specific amounts for these expert fees or, more importantly, provide any authority showing that non-testifying expert fees may be recoverable as "costs" in a judicial foreclosure action.[18] In fact, in certain types of cases, expert fees (especially for experts that do not testify at trial) are not recoverable as costs. See, e.g., West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83 (1991) (under § 1988, "attorneys' fees and expert fees are distinct items of expense."); Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 442 (1987) (an award of "costs" under Fed. R. Civ. P. 54(d) does not include expert witness fees); Denny v. Westfield State Coll., 880 F.2d 1465, 1467 (1st Cir. 1989) (finding that fees for expert witness, whose testimony "played a critical role in the plaintiffs' success at trial," were not recoverable costs under Title VII of the Civil Rights Act); see also McLaughlin ex rel. McLaughlin v. Boston Sch. Comm., 976 F. Supp. 53, 69 (D. Mass. 1997) (disallowing expert fees where expert did not testify); McCullough v. Cady, 640 F. Supp. 1012, 1026 (E.D. Mich. 1986) (same).

Because Korde's request for $34,213 in alleged "court cost[s]" or costs to obtain documents does not meet the requirements of Local Rule 54.1(b), and Wells Fargo does not

[18] At oral argument, counsel for Wells Fargo argued that the expert fees should be recoverable because she was required to have the expert on standby as a result of the Defendants' shifting trial strategy and uncertainty over whether they would testify. This, Wells Fargo contends, is akin to the expert actually testifying at trial. The court disagrees. In a case where Wells Fargo presented evidence of the Defendants' payment history for the loan in question, it does not seem like there was ever a serious risk that the Defendants' forgery or lack of signature defenses were likely to persuade the jury. The expert's testimony was therefore not needed to aid the jury's determination.

provide any authority for this request as it pertains to expert fees, the court reduces it significantly to account for only the court transcript costs and not the expert fees. See L.R. 54.1(b) ("A bill of costs, prepared on forms available from the clerk's office or on a filing substantially similar, shall comply with the provisions of 28 U.S.C. § 1924 and shall set forth distinctively each item of cost so that the nature of the charge can be readily understood . . . . An itemization of all costs shall be attached to the bill of costs."). The court approximates those court transcript costs (for a "show cause" hearing and "status conference") at $595.05, based on the court's understanding of the general rates charged by its official court reporters.[19]

The remainder of Korde's requested costs, however, appear to be reasonable and supportable and the court will therefore include them in the final cost assessment, resulting in a total of **$6,828.03**.

Between Locke Lord and Korde and Associates, Wells Fargo is entitled to costs totaling **$8,582.78**.

## III. Conclusion

For the reasons set forth above, Wells Fargo's motion for attorneys' fees and costs[20] is GRANTED in part. Wells Fargo is awarded $184,551.50 in attorneys' fees and $8,582.78 in costs. The clerk shall enter judgment accordingly and close the case.

---

[19] The show cause hearing appears to be the hearing held on November 4, 2019. The transcript from that hearing was prepared and entered on the docket on November 15, 2019 (doc. no. 192). It totals 61 pages. At the 14-day expedited transcript rate of $4.25 per page, the total cost of this transcript was $259.25. The "status conference and hearing" appears to be the conference held on September 16, 2019. The transcript from that hearing was prepared and entered on the docket on October 8, 2019 (doc. no. 177). It totals 92 pages. At the 30-day transcript rate of $3.65 per page, the total cost of this transcript was $335.80.

[20] Doc. no. 289.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: October 14, 2021

cc: Daron L. Janis, Esq.
John S. McNicholas, Esq.
Tara L. Trifon, Esq.
David B. Moskoff, pro se
Daphne M.N. Fotiades, pro se